UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CRIMINAL NO. 3:21-CR-0070-B |
| § | |
| ANTHONY LENNELL ACY, § | |
| § | |
| Defendant. § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Anthony Lennell Acy ("Acy")'s Motion for New Trial Based on Newly Discovered Evidence (Doc. 119). For the reasons that follow, the Court **DENIES** Acy's motion.

### I.

### BACKGROUND

A.  *Acy's Arrest and Trial*

This is a sex trafficking case. On January 25, 2021, Acy was named in a criminal complaint filed in the Northern District of Texas, alleging he committed Sex Trafficking of a Child in violation of 18 U.S.C. § 1591(a) and (b)(2). Doc. 1, Compl. On May 25, 2021, he was named in a two-count superseding indictment. Doc. 27, Superseding Indict. Count One of the superseding indictment charged Acy with Sex Trafficking of a Child in violation of 18 U.S.C. § 1591(a)(1) and (b)(2). *Id.* at 1. Count Two charged him with Sex Trafficking in violation of 18 U.S.C. § 1591(a)(1) and (b)(1). *Id.* at 2. Acy elected to go to trial and a jury trial was held from August 2, 2021, through August 5, 2021. *See* Docs. 79–80, 82–83, Elec. Min. Entries. On August 5, 2021, the jury returned a verdict

of guilty on both Count One and Count Two. Doc. 85, Jury Verdict, 1. Acy is currently awaiting sentencing.

B.  *AV1's Trial Testimony*

The instant motion involves the trial testimony and post-trial actions of Adult Victim 1 ("AV1"), the Count Two trafficking victim. *See* Doc. 119, Def.'s Mot. New Trial, 2. Count Two required the Government to prove three elements beyond a reasonable doubt:

> First: That the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited by any means [AV1];
>
> Second: That the defendant committed such act knowing or in reckless disregard of the fact that means of force, threats of force, fraud[,] coercion,[1] or any combination of such means, would be used to cause [AV1] to engage in a commercial sex act; and
>
> Third: That the defendant's acts were in or affected interstate commerce.

Doc. 84, Jury Charge, 11.

---

[1] The jury was instructed that:

"Coercion" means:

(A) threats of serious harm to or physical restraint against any person;
(B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or
(C) the abuse or threatened abuse of law or the legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

"Serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

Doc. 84, Jury Charge, 12.

Regarding the second element, AV1 testified that Acy prevented her from communicating with her family, would not let her leave until she earned the money he claimed she owed him, hit and slapped her, took the money she earned through commercial sex acts and prevented her from stashing money for herself, threatened to hurt her if she did not earn $1,000 each day, and threatened to have his brothers hurt her family if she stopped working for him.[2] AV1 also testified that Acy owned both a knife and a gun, and that he threatened her with both. Further, she testified that Acy told her that his brothers had been to prison for murder and would kill her family if she called the police or left. Though AV1 testified that Acy's claim that his brothers were murderers didn't sound realistic to her and that she was happy when she got to meet Acy's brothers because it meant she was being treated as Acy's girlfriend, she also claimed that she was terrified of Acy's brothers. To corroborate AV1's testimony, the Government showed the jury photos of AV1 with facial bruises she testified were inflicted by Acy, taken after police recovered her from a Dallas hotel where she was performing commercial sex acts. Gov't's Exs. 22–23. The Government also introduced evidence showing Acy owned a gun and showed the jury Acy's bank, cell phone, and credit card records indicating he controlled AV1's finances and communications. *See, e.g.*, Gov't's Exs. 63–64, 74, 108, 206, 212.

Particularly relevant to this motion is AV1's testimony regarding statements she made to law enforcement officers during an interview following her recovery from the Dallas hotel room (the "Dallas recovery") and an interview following an incident in February or March of 2020 in which she was recovered from an Austin hotel room (the "Austin recovery").

---

[2] A certified trial transcript has not yet been filed in this case, but the Court has reviewed the rough transcripts in considering this motion. AV1 testified on days two and three of trial, as indicated by Electronic Minute Entries Docs. 80 and 82, respectively.

In her interview after the Dallas recovery, AV1 told officers that she posted all the commercial sex ads that concerned her and that Acy never forced her to perform commercial sex acts, assertions contradicted by her testimony at trial. On direct examination, AV1 testified that she lied to the officers during this interview because she was emotional and was trying to protect Acy, who she loved, and that her trial testimony—that Acy coerced and threatened her causing her to engage in commercial sex acts—was truthful. Acy's counsel vigorously attacked AV1's credibility on cross examination, asserting that her initial version of events was truthful and that she was now lying to avoid being charged as an accomplice to Acy's trafficking of Jane Doe 1, the child victim who was the basis of Count One.[3]

AV1 similarly testified about her interview statements following the (earlier) Austin recovery.[4] AV1 admitted that, as with the Dallas recovery interview, she initially told officers in the Austin recovery interview that she voluntarily engaged in commercial sex work, but later stated that she was terrified of Acy's brothers and had been forced to work for Acy. She testified that, again, she lied in the initial interview to protect Acy. But, on cross examination, she admitted that she had been told in the Austin case that if she did not cooperate with officers she might face legal consequences.

Acy's counsel's cross examination of AV1 attacked her credibility by emphasizing AV1's inconsistent statements to police after both the Dallas and Austin recoveries and AV1's possible

---

[3] Jane Doe 1 testified on the second day of trial. Consistent with AV1's testimony, Jane Doe 1 testified that she saw Acy, not AV1, post the online ads for AV1, and that she believed AV1 would get in trouble with Acy if AV1 did not do what he wanted.

[4] After the Austin recovery, AV1 returned home to her family but after about two months returned to Dallas and resumed her relationship with Acy, leading to the present case.

motivation to avoid prosecution as an accomplice.

C.    *AV1's Post-Trial False Threat*

On December 8, 2021, the Government filed a Notice of Disclosure "mak[ing] the Court and defense counsel aware of an incident involving . . . AV1." Doc. 105, Not. Disclosure, 1. Attached to the notice was a Department of Homeland Security ("DHS") Report of Investigation dated December 2, 2021, setting forth the following account:

> On November 29, 2021, [a DHS agent] was contacted by AV1 . . . regarding a threatening message sent via instant messenger to her Facebook account . . . .The message is as follows:
>
> "SO BITCH YOU THINK YOU CAN JUST SHOW UP IN COURT AND GET MY BROTHER IN TROUBLE YOU HAD EVERY PART IN IT YOU AINT INNOCENT AND BEST BELIEVE WE KNOW WHERE YOU STAY AT DONT THINK THEM LITTLE FEDERAL OFFICERS GONE GET YOU OUT ON THIS ONE WE GOT MONEY ON YO HEAD YOU THINK THEM LITTLE PETTY OFFICERS YOU HAD WITH YOU AT COURT CAN SAVE YOU. YOU BETTER HOPE AND PRAY YOU DONT SHOW UP TO SENTENCING"
>
> The Facebook profile username was viewed as being sent from . . . "[Acy's younger brother]" . . . . On November 30, 2021, [agents] were unable to locate [this] . . . Facebook account. To identify a Facebook User ID from the message, [the DHS agent] obtained verbal consent from AV1 to log in to her Facebook account and download a copy of her Facebook profile. When the profile belonging to "[Acy's younger brother]" was clicked on, the following URL appeared: https://www.facebook.com/[identifying number].
>
> [The DHS agent] sent an account preservation request as well as an exigent subscriber information request to Facebook via Facebook's Law Enforcement Portal for [the identified] Facebook account ID . . . [and] Facebook returned the subscriber information as belonging to . . . "[Acy's younger brother]" with a verified phone number and confirmed that the account had been terminated. Using investigative databases, [DHS agents] determined that the phone number was serviced by AT&T. [A DHS agent] contacted AT&T . . . and received an emergency ping as well as subscriber information for the phone number. Through the investigation, [agents] determined that AV1 had created the . . . Facebook account [in the name of Acy's younger brother] and that there was no legitimate threat.
>
> On December 2, 2021, [DHS agents] . . . perform[ed] a noncustodial interview of

> AV1. . . . AV1 admitted to sending the message on Facebook and apologized to [the DHS agents] for the incident. AV1 [told them she] was scared to attend sentencing and was ready for this part of her life to be behind her.

Doc. 105-1, DHS Investigative Report, 2–3.

D.  *Acy's Motion for New Trial*

After receiving the Government's notice, Acy filed the instant motion for new trial based on newly discovered evidence.[5] Acy argues that AV1's testimony at trial "was directly against [Acy] . . . describ[ing] assaultive and other behavior," and that her subsequent "criminal acts [of making a false threat] . . . showed . . . clearly how deeply she was intent on harming [Acy—]even to the point of committing and trying to commit federal crimes and . . . defraud[] the Court." Doc. 119, Def.'s Mot. New Trial, 1. AV1's false threat, Acy claims, while "not exactly like . . . what she claimed [at trial] that . . . [Acy] did to her," is very similar: she testified at trial that Acy controlled her actions, in part, by making threats that his brothers would harm her family, and after trial "falsely reported the commission of what would be, or what was, a federal crime, seriously involving [Acy] . . . [by saying] she was violently threatened by [Acy's] brother." *Id.* at 1–2. "This evidence of criminal activity by AV1 would have been extremely important, relevant, and damaging to her credibility," Acy stated, and "defense counsel having that information about the lack of credibility[] would reasonably have affected the outcome of the trial." *Id.* at 2.

The Government has responded to Acy's motion. Doc. 121, Gov't's Resp. Accordingly, the motion is ripe for determination and the Court considers it below.

---

[5] While awaiting sentencing but before the Government's notice, and again after receiving the Government's notice, Acy moved for substitution of counsel. *See* Doc. 99, Def.'s Mot. New Couns.; Doc. 115, Def.'s 2d Mot. New Couns. On December 16, 2021, the Court held a hearing and granted Acy new counsel. Doc. 116, Elec. Min. Entry; Doc. 117, Order Subst. Couns.; Doc. 118, Order Appt. Couns. Acy's instant motion was filed by Acy's new counsel. *See* Doc. 119, Def.'s Mot. New Trial, 1.

II

## LEGAL STANDARD

"Federal Rule of Criminal Procedure 33 permits the district court to 'vacate any judgment and grant a new trial if the interest of justice so requires.'" *United States v. Piazza*, 647 F.3d 559, 565 (5th Cir. 2011) (quoting Fed. R. Crim. P. 33(a)). However, "motions for new trial are disfavored and must be reviewed with great caution." *Id.* (citing *United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004)). The Fifth Circuit follows the *Berry* rule, which requires that:

> To receive a new trial for newly discovered evidence, the defendant must satisfy the following prerequisites: "(1) the evidence was newly discovered and unknown to the defendant at the time of the trial; (2) failure to detect the evidence was not a result of lack of due diligence by the defendant; (3) the evidence is material, not merely cumulative or impeaching; and (4) the evidence will probably produce an acquittal."

*United States v. McClaren*, 13 F.4th 386, 416 (5th Cir. 2021) (quoting *United States v. Ardoin*, 19 F.3d 177, 181 (5th Cir. 1994)). The motion must be denied if the defendant fails to show any one of the *Berry* rule prerequisites. *Piazza*, 647 F.3d at 565.

III.

## ANALYSIS

Acy argues that AV1's post-trial false threat is newly discovered evidence that, if presented at trial, would have so damaged AV1's credibility that it "would reasonably have affected the outcome of trial." Doc. 119, Def.'s Mot. New Trial, 2. He emphasizes that AV1's false threat was either or both an attempted or a completed federal crime. *Id.* at 1–2. Further, he stresses the similarity between the post-trial false threat, which purported to show a serious threat made against AV1 by Acy's brother for Acy's benefit, and AV1's trial testimony that Acy threatened her and said that his brothers would harm her family if she attempted to leave or call the police. *Id.*

The Government responds that Acy's allegations fail to satisfy three of the *Berry* rule prerequisites. Doc. 121, Gov't's Resp., 3–4. "First, the evidence at issue is not 'newly discovered' [because] it did not exist at the time of trial . . . [and] '"newly discovered evidence" must have been in existence at the time of trial.'" *Id.* at 3 (emphasis omitted) (quoting *United States v. Lafayette*, 983 F.2d 1102, 1105 (D.C. Cir. 1993)). "The false report at issue was made . . . more than three months after the verdict." *Id.* "Second, the [false report evidence] is merely cumulative or impeaching." *Id.* (emphasis omitted) (citing *Wall*, 389 F.3d at 470). And third, "there is no reasonable probability that the evidence if introduced at trial would produce an acquittal" because at trial defense counsel sought "to impeach AV1 at every opportunity, including by repeatedly accusing her of lying in order to obtain a conviction." *Id.* at 4. So, the Government argues, "[t]here is no reason to believe that the false report here—on a subject far afield from the [main] run of AV1's trial testimony—would have probably . . . produced an acquittal." *Id.*

The Court agrees with the Government that Acy has not satisfied all of the *Berry* prerequisites and is not entitled to a new trial. *See Piazza*, 647 F.3d at 565. First, the false threat was not in existence at the time of trial and cannot constitute "newly-discovered evidence" under longstanding precedent of this circuit. *See Chem. Delinting Co. v. Jackson*, 193 F.2d 123, 126–27 (5th Cir. 1951) ("The phrase 'newly discovered evidence' refers to evidence of facts *in existence at the time of the trial* of which the aggrieved party was excusably ignorant.") (emphasis added) (citing *Campbell v. Am. Foreign S.S. Corp.*, 116 F.2d 926, 928. (2d Cir. 1941)); *Longden v. Sunderman*, 979 F.2d 1095, 1102–03 (5th Cir. 1992) ("The newly discovered evidence must be in existence at the time of trial and not discovered until after trial."). AV1 made the false threat months after Acy's trial, perhaps to influence sentencing as Acy claims, or to avoid having to attend it, as she claims. *See* Doc. 119,

Def.'s Mot. New Trial, 1; Doc. 105-1, DHS Investigative Rep., 3. Regardless, the false threat evidence did not exist at the time of trial and cannot justify a new trial. *See Piazza*, 647 F.3d at 565 (stating that the Court must deny such a motion if any of the *Berry* requirements are not met).

Second, the false threat evidence is not material, but merely impeaching. *See McClaren*, 13 F.4th at 416–17. Had the false threat evidence existed before trial it would undoubtedly have been used to impeach AV1 and cast doubt on her claim that she committed commercial sex acts out of fear for her safety and the safety of her family. As Acy concedes, AV1's credibility on this issue was tested at trial by vigorous cross-examination. Doc. 119, Def.'s Mot. New Trial, 1. Particularly, Acy's counsel challenged AV1 about the inconsistencies between what she told police in her interviews after both the Austin and Dallas recoveries, asking her to admit that she lied to police. And she did admit to the jury that she lied. Further, AV1 admitted that she had been told by police that if she did not cooperate she might face legal consequences and Acy's counsel pressed her about whether she had changed her story to avoid facing such consequences. All of this had the effect of impeaching AV1. The new false threat report evidence would have been additional impeachment evidence.

To be clear, the Court does not agree with the Government that this new evidence is "more of the same" kind of impeachment evidence offered at trial. Doc. 121, Gov't's Resp., 4. The Court views AV1's false threat with utmost seriousness and believes it is possible that this evidence would have (rightly) impacted AV1's credibility in the eyes of the jury. However, the *Berry* analysis requires that evidence be "material, not merely cumulative or impeaching." *McClaren*, 13 F.4th at 417. And "evidence is not material if its only evidentiary purpose is to impeach trial testimony." *Id.* at 416–17 (quoting *United States v. Eghobor*, 812 F.3d 352, 363 (5th Cir. 2015)). This is true even when the new evidence is relevant to a key witness's credibility or shows that a witness may have "lied

extensively on the witness stand." *See id.* (quoting *United States v. Garcia-Esparza*, 388 F. App'x 407, 408 (5th Cir. 2010)). Moreover, AV1 "was not an untarnished witness whose credibility later came into question" but "admitted to previously lying to the government" and to being aware that cooperating might be in her best interest. *See id.* at 417. Therefore, even if the false threat was newly discovered evidence, this additional *Berry* prerequisite is not met.

Because the Court finds that Acy has not met two of the *Berry* rule's other prerequisites, it need not decide whether presentation of the new evidence at trial would have *probably* or only *possibly* led to Acy's acquittal on Count Two. Acy claims that the false threat—which he asserts is an attempted or completed criminal act—would have probably altered the outcome of his trial because it would have destroyed AV1's credibility and her testimony was "directly against" Acy. Doc. 119, Def.'s Mot. New Trial, 1. But while AV1's credibility was a key issue, the Government also presented evidence corroborating her claims that Acy "cause[d]...[AV1] to engage in a commercial sex act" by "means of force, threats of force, fraud[,] coercion, or any combination of such means." *See* Doc. 84, Jury Charge, 11; *see, e.g.*, Gov't's Exs. 22–23, 63–64, 74, 108, 206, 212. Considering the totality of the evidence, it is unclear whether presentation of the false threat evidence at trial probably would have led to Acy's acquittal on Count Two. *See McClaren*, 13 F.4th at 417.

In sum, Acy has not satisfied at least two of the *Berry* prerequisites. Therefore, his motion for new trial is **DENIED**.

### IV.

### CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion for New Trial Based on Newly Discovered Evidence.

SO ORDERED.

SIGNED: April 11, 2022.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE